24 C.C.P.A.(Patents)
### HAGEN v. CORDS.
### Patent Appeal No. 3795.

Court of Customs and Patent Appeals.
April 5, 1937.

Henry E. Stauffer, of Washington, D. C., for appellant.

Strauch & Hoffman, of Washington, D. C. (Ralph L. Stevens, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant, Rudolf A. Hagen, has here appealed from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention in the subject-matter of the single count at issue to the appellee Cords.

The interference involves the applicacation of Hagen, filed September 6, 1932, and the application of Cords, filed April 22, 1932, as a continuation in part of his parent application filed February 4, 1931.

The count reads as follows: "In combination with means providing an annular packing ring groove, a set of light resilient rings of dished form snugly disposed in said groove but remaining in dished form therein, each ring consisting of at least one substantially complete convolution of thin ribbon-like metal, certain convolutions of the set of rings being arranged with their dished faces in opposition to the corresponding faces of certain other convolutions of the set, whereby the assembled packing when viewed in cross section has the appearance of several laterally engaged V-shaped sections the crotches of which are located in alignment adjacent the open edge of the groove."

The invention relates to piston rings. A complete ring consists of a set of two, four, six or more segments or elements, in pairs, which are made by bending them into circular shape from a thin, flat, light, oil-tempered steel ribbon. The ring is bent while cold on lines transverse to the width of the ribbon. The bending operation is so performed that a definite dish or cup shape is imparted to the ring segments

—a frustro-conical shape. The rings are placed in the piston groove in such manner as to have two or more of the segments having the dished faces in opposition so as to form V-shaped channels or clearances. In reducing the diameter of the ring segments in applying them to the piston or in placing the piston in a cylinder, the segments take on a greater degree of dishing and, necessarily, upon pressure, fit more tightly upon the inner ·surface of the groove in the piston head. The invention is urged as being of great importance in the repair of worn automobile engines.

Appellant's three reasons of appeal upon which he relies are as follows:

"1. The Board of Appeals erred in holding that the Cords early or parent application, Serial No. 513,440, filed February 4, 1931 (now patent No. 1,919,584), which has been used as the basis of the award of priority, supports the issue.

"3. The Board of Appeals erred in construing the so-called 'whereby' clause of the single count of the issue so as to inject thereinto an idea of structure not justified by the elements recited.

"4. The Board of Appeals erred in holding that the word 'snugly,' as used in the issue of the interference to define the character of the fit of the rings in the grooves of the piston, found response in the Cords early application No. 513,440, after holding that the disclosure of that application required a definite clearance of at least five one thousandths (.005) of an inch of said rings in their grooves."

We are of the opinion that the sole question presented here for decision, which we may consider, is the correctness of the action of the Board of Appeals in affirming the holding of the Examiner of Interferences that the subject-matter of the count was disclosed in Cords' parent application.

Cords' parent application bears a date long prior to any date claimed by appellee either for conception or reduction to practice, and the controlling question in awarding priority involves the right of Cords to make the count. Appellant's first reason of appeal raises this question. The question raised by the fourth reason of appeal is involved in the decision of the first reason. The third reason of appeal involves the consideration of patentability with which we are not here concerned. The Board's discussion of the "whereby" clause seems to have been with a view of distinguishing the count from the prior art and had nothing to do with the question of whether or not Cords' parent application disclosed the elements of the count at bar. We will, therefore, give no further consideration to the third reason of appeal.

Appellant's contention that the count does not read upon the parent application of Cords is predicated upon the proposition that the structure of Cords as disclosed in his parent application did not show rings which were "snugly disposed in said groove." Appellant states that the parent application as filed contained a statement that "The grooves are preferably filled with rings, a clearance of .005" being maintained in the groove, and points out that the Patent Office tribunals, in an interference proceeding with which we are not here concerned, held that the said Cords application definitely required a clearance of .005 inches between the sides of the ring and the sides of the groove in which the ring was placed, and argues that since the Patent Office had held in the earlier interference that a clearance of that amount was required, it was inconsistent for the Examiner of Interferences and the Board in this case to hold that Cords' said application disclosed that the rings were snugly disposed in the groove. This particular phase of the question is stressed here at considerable length. In fact it is the only point stressed by appellant, except the matter involving the "whereby" clause to which we have hereinbefore referred.

After the Board had affirmed the Examiner of Interferences on January 17, 1936, appellant filed a petition to rehear or amplify its decision, and on February 27, 1936, the Board, without a rehearing, "amplified" its former decision, adhered to its views formerly expressed, held that the count read upon the disclosure in Cords' parent application, and affirmed the award of priority in the issue of the count to the party Cords.

Concerning the question here involved, the Board said:

"The only question properly before us on that appeal was the right of Cords to rely on his earlier application, 513,440, to support the count and such matters as were more or less directly related to this question. The Hagen brief, in arguing this point, stressed an alleged similarity be-

1000

tween the count and a claim held in our former decision to be unpatentable. In making this comparison, the party Hagen assumed that there had also been a holding that the claim to which the present count was compared was not supported by the earlier Cords application but as we pointed out, and as Hagen now concedes, there was no such holding. In passing on this holding, we disposed in the main of the contention on which Hagen's appeal was based.

"There is some discussion in the Hagen brief of the term 'snugly,' which appears in the count, but not in the claim to which the count was compared. Certain claims which have previously been held not to be supported by the earlier Cords application required that the assemblage of rings be so related to the dimensions of the groove in which they were placed that such assemblage would be compressed or deformed in order to completely fill the grooves. In our decision on these claims, we held that the earlier Cords application did not support claims involving assemblage in this particular manner. If the word 'snugly' in the present issue requires actual deformation or a fit in the groove without clearance, it is obviously not supported by the earlier application because there is a definite statement therein that a certain amount of clearance is provided for. It ·seems to us, however, that the term in question required nothing more than that the rings substantially fill the groove, whether there be slight clearance or not. In our opinion, the earlier application supports the count and the later application as well."

 It is a well-settled rule in patent interferences where the question of interpretation of counts is involved, that the counts will be given as broad a construction as their language will reasonably permit. It seems to us that the appellant has asked, to say the least, a very narrow construction of the count. But, we believe that under any reasonable construction of the count, its elements were disclosed in Cords'· parent application. It seems obvious that the flexibilities of the rings, the manner of their construction, and the manner in which Cords shows that they were to be placed into the grooves, suggests that they, we may say, were to nestle into the groove snugly. We find no definition of the word "snugly" given by any of the authorities which indicates that that term may be applied only to a very tight fit. The degree of tightness intended to be conveyed by the word "snugly" must necessarily depend on the connection in which it is used. What would be snug in one instance might be very loose in another. Cords in his parent application clearly taught the filling of the grooves, and we think he showed a filling of the grooves and a snug disposition of the rings notwithstanding the fact that there might be .005 inches clearance behind the rings. The fitting with which Cords was concerned was not that character of fitting which required air-tightness, or a precision ofttimes required in fitting many different journals and bearings connected with an automobile. We think the term "snugly" may be applied to Cords' parent disclosure appropriately as indicating that the rings would have to be so placed as to avoid large undesirable clearances which would defeat the purposes of the· invention.

It follows that the decision of the Examiner of Interferences, holding that the count reads upon appellee's original disclosure, and awarding priority of invention therein to the appellee, was not erroneous, and that the Board's decision affirming that of the Examiner of Interferences was correct. The Board's decision is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate in this decision.